# KERR

*v.*

# KURTZ.

*(Supreme Court of Appeals of Virginia, Sept. 19, 1878.)*

### Promise to Pay for Services—Case at Bar.

On 16th of April, 1870, John Kerr was taken suddenly and violently ill and at his request George Kurtz and James Kreemer who were engaged in business with him left their work and nursed him, he saying to them, ''Boys leave your work and come and nurse me, and I will pay you well for it in my will''; which promise he often repeated to them during his illness, and after his recovery declared ''That money can not pay the boys for nursing me.'' He made his will and bequeathed to them $1,000 each. He subsequently became angry with them and revoked the bequest to them. After the death of John Kerr, George Kurtz and James Kreemer brought separate actions against the executors of John Kerr for the amount promised them for their services in nursing the said John Kerr during his illness: *held* :

### Same—Compensation—What Jury May Consider.

1. That since the contract as laid in the declaration is clearly proved, the only question is as to the amount of compensation, and as to the estimation of this the jury were not restricted to the prices usually paid nurses for their attendance upon the sick.

### Same—Same—Instruction.

2. That an instruction, to the effect that it was a matter properly for the consideration of the jury, whether the bequest was made to the plaintiff in consideration of his services and in fulfillment of the defendant's promise, and whether it expresses the value or estimate which the testator himself put upon the plaintiff's services to him, is not erroneous.

### Same—Proof of Contract—Witnesses—Competency of.

3. That Kreemer was a competent witness in the suit brought

by the plaintiff Kurtz against the executors of Kerr, since there were separate suits brought against the estate, and the fact that the interests of Kurtz and Kreemer were similar, would not render either incompetent at common law.

### Appellate Practice—Excessive Verdict.

Whether the verdict is excessive or not, the jury and the court below, who heard the testimony and knew the witnesses and parties, are better qualified to judge than the appellate court; and the judgment or verdict ought not to be reversed or set aside unless it is plainly and palpably excessive.

Appeal from corporation court of the city of Winchester.

This was an action of assumpsit brought in the corporation court of the city of Winchester by George Kurtz against executor of the estate of John Kerr, for the sum of $1,000.00 alleged to have been promised to the plaintiff by the said John Kerr for nursing the latter through a long illness. There was a judgment for the plaintiff from which judgment the defendant appeals. Judgment affirmed.

*Barton* and *Conrad*, for appellee.

*Holmes Conrad*, for appellant.

ANDERSON, J., delivered the opinion of the court.

The contract as laid in the declaration is clearly proved. The plaintiff is consequently entitled to compensation. The only question is as to the amount.

The jury, in estimating what the plaintiff's services were worth, were not restricted to the prices usually paid nurses for their attendance on the sick. Nursing was not the plaintiff's business. He had a regular employment which paid much better than professional nursing at the usual rates and the rewards of which might probably be greatly enhanced

by close attention. He did not offer his services to the public or to the sick in the capacity of a nurse. John Kerr was taken suddenly ill, and the plaintiff and another, James P. Kreemer, nursed him. Soon after he was taken extremely ill, John Kerr said to them, "Boys, just leave the shop alone and come and take care of me. I will pay you well for it in my will"; which promise he often repeated to them during his illness, and after his recovery declared "that money could not pay the boys for nursing him." And he made his will and bequeathed to each of them $1,000.00.

It was a matter properly for the consideration of the jury, whether that bequest was made to the plaintiff in consideration of his services, and in fulfillment of the defendant testator's said promise. And whether it expresses the value or estimate which John Kerr put upon the plaintiff's services to him. It was for the jury to determine for themselves in view of the bequest aforesaid, in connection with John Kerr's opinion as to the value of the plaintiff's services, as declared after his recovery, and the character of the services which the plaintiff rendered him and the circumstances under which the services were rendered. We are of opinion, therefore, that there is no error in the instruction given by the court, on motion of the plaintiff, to the jury, that in estimating the value of the services rendered by the plaintiff, they may consider all the circumstances under which the services were rendered, and also any estimate placed upon them by John Kerr, the defendant's testator—which instructions was given in connection with instructions Nos. 1, 2 and 3, which were given at the request of the defendant's counsel.

The jury found that the plaintiff's services were worth $1,000.00 and the court overruled the defendant's motion for a new trial, and rendered judgment for the amount of the verdict, and the defendants excepted to the ruling of the court overruling the motion for a new trial.

The objection that the instruction granted at plaintiff's request has already been considered and held to have been properly given, and we do not consider that it was a misdirection to the jury.    Nor do we consider that it was calculated to mislead or did mislead the jury.    And was it excessive?  It was upon the foregoing ground that the defendant moved for a new trial.    We have said that the contract was clearly proved, and that the plaintiff was entitled to a verdict, and that the only question was as to the amount he was entitled to recover.    And that is a question which belonged peculiarly to the province of the jury.    Whether it was excessive or not, the jury, and the court below, who heard the testimony and knew the witnesses and parties, were better qualified to judge than the appellate tribunal.    And the judgment or verdict ought not to be reversed or set aside unless it was plainly and palpably excessive.

We cannot say that the finding under the circumstances and under the instruction of the court, and upon the evidence which was ruled to be legal, and which we have held not to be error, was excessive, at least not so plainly and palpably excessive as to warrant the appellate court upon that ground to reverse the judgment and set aside the verdict.    The value of the services, of the character rendered, for which this suit was brought, is not to be limited by evidence of what similar services might have been procured by other persons, or ordinary nurses.    The sick man, who was extremely ill, may have had a *personal* preference for the plaintiff, over professional nurses, or other persons.    It may have been his earnest desire to have the plaintiff in constant attendance on his sick chamber and at his bedside on account of personal confidence and reliance on him and regard for him.    It may have been soothing and comforting to him to know that he was at his bedside, near enough to reach his hand to him and to look him in the face.    And knowing that the services that he had to perform were of an unpleasant nature, and were

not such as belonged to his avocation ; and that in order to render the services he desired, he would have to give up his regular avocation and make a sacrifice of his business interests, he was willing to offer extraordinary inducements for him to do so, and to put an extraordinary value upon his services, which he certainly had a right to do. This he did. And in consideration of that promise made to both him and M. Kreemer, they did both just leave their shop alone, gave up their business, and devoted themselves to nursing and taking care of the sick man and succeeded in raising him up from his bed of sickness, and so valuable did he regard their services, that he declared after his recovery that money could not pay them. And he made his will and according to his promise that he would pay them well, bequeathed to each of them the sum of one thousand dollars. The value of the services in each circumstance may not only be estimated by the character of the services rendered, but also by the personal qualities of the parties by whom they are rendered. The sick man may have a personal preference for one man over all others. It may be a great comfort and consolation to him to have a certain person in constant attendance upon him in his time of sore trial, over all others, and knowing that he will have to make personal and pecuniary sacrifices to gratify his wishes to secure them, he may be willing to pay him double, trible—yea, ten times as much as he would pay an ordinary nurse. He did not specify the amount, but promised that he would pay him *well* by his will, which he repeated time and again. The plaintiff did not ask him to specify the amount. He was willing to leave it to him, knowing, or trusting that it would be liberal.

He did make his will and bequeathed to pay the plaintiff $1,000.00. And to James P. Kreemer, to whom he had made a similar promise, and who had rendered the same services, under similar circumstances, he bequeathed the

same amount.    The jury had a right to infer from the facts and circumstances proved, that the $1,000.00 bequeathed to the plaintiff was made by John Kerr, pursuant to his promise, and in consideration of the plaintiff's services, and that it was the estimate put upon them by John Kerr himself, and that no one was so well qualified as John Kerr was to put a proper estimate upon the services, and the jury may have fairly concluded, under all circumstances, that the amount so allowed to John Kerr was not in excess of the compensation to which the plaintiff was entitled.

Afterwards it seems that John Kerr became offended with the plaintiff and Kreemer; it does not appear from what cause, good or bad.    It is certified that he was high tempered and capricious in his friendships, and he erased from his will the provision which he had made for each of them, and disregarding his repeated promises and in violation of them, made no provision for either of them.

It is in general true that a man has a right to change his will.    But if he has made a contract with another to pay him well for his services and to provide by his will for its payment, and those services have been rendered to his satisfaction, and he has made his will providing for its payment, I deny that he has a right to change his will by erasing that provision and making no other for its payment.    That is this case.    He had enjoyed the benefit of their services, which at his request, they had rendered him at the sacrifice of their own interests, and which after they had been rendered, he regarded as so valuable to himself that money could not compensate them.    He afterwards got mad with them, forgot the valuable services they had rendered to him and his solemn assurances whilst those services were being rendered that he would reward them liberally, and the obligation he felt and expressed to them after the services were rendered ; erased from his will the provision he had made

for them in fulfillment of his obligation, and made no provision whatever for either of them. That act could not affect the value at which he had previously estimated their services. We are of opinion, therefore, that upon this ground we would not be warranted in reversing the judgment and setting aside the verdict.

We are further of opinion that the court did not err in allowing the plaintiff to amend his declaration and to file a bill of particulars, and overruling the demurrer or in overruling the defendant's motion to reject the bill of particulars which the plaintiff did file.

Nor do we think there is error in the refusal of the court to instruct the jury to find a special verdict or a verdict responsive to the questions of fact proposed by the defendant. Without deciding whether in any case the court can compel a jury to find a special verdict, we think in this case it was a question addressed to the discretion of the court whether to give such instruction or not, and we are of opinion that the court did not err in its direction unduly in refusing to give the instruction.

We are also of opinion that there was no error in including the joint account of Kurtz and Kreemer with Kerr and their receipt for the balance on settlement, as evidence in this suit, which is a suit not between the same parties, but upon a several contract between Kurtz and Kerr's executors. For the same reason we think that James P. Kreemer was a competent witness in this case for the plaintiff. He was no party to the suit, nor was he a party to the several contracts between John Kerr and the plaintiff, which is the subject of this suit. The fact that Kreemer's interest is similar to the plaintiff's would not render him incompetent at common law. The verdict in this case would not be evidence in a suit between Kreemer and the same defendants.

The error in entering the judgment, if it had not been corrected, was no ground for reversing the judgment, as it was such error as the appellate court could correct by amendment, and affirm the judgment. Code of 1873, p. 1135, ch. 177, sec. 86. Upon the whole we are 'of opinion to affirm the judgment with costs.